Good morning, Your Honors. Joseph Roth and Ann Conley, certified law students under supervision of Attorneys Peter Afrasiabi and Katherine Davis, on behalf of Petitioner Libin Guo. Good morning. We would like to divide our opening time. I will be discussing the adverse credibility finding, and my colleague will then come to discuss the merits. If I may, we would like to reserve two minutes for rebuttal. Certainly. The BIA's adverse credibility finding here is undermined by pervasive translation defects on this record, as well as a failure to consider Mr. Guo's circumstances as a Chinese journalist. The BIA first found that Mr. Guo could not answer basic questions about his article, specifically the properties of the disease and the treatment at issue. But Mr. Guo could answer such questions, and if this Court has doubts, any doubts are the result of translation defects and speculation. Regarding the properties of the disease, there's nothing the BIA can do. It's hard to know whether there are translation defects or not just looking at the cold record, because we don't have the interpretation portion of it. Right? So there were instances in the record where the interpreter asked to pause and look words up, but whether she eventually, the interpreter, misinterpreted the questions or not, it's kind of hard to tell, isn't it? Well, Your Honor, there were certain cases where the interpreter looked terms up. At AR-111, she had to look a term up because she said she was from a different area than Mr. Guo, which in context is telling us that she speaks a different dialect than he does. Also at AR-118, he said leces or for was the type of medicine, and his interpreter said that she was unable to interpret this. Here is something that he said about the treatment of the disease that was not interpreted, and the BIA now finds that he couldn't answer questions about the treatment. Was he represented by counsel? He was represented by counsel, Your Honor. And did counsel make any kind of record about the translation problems? His counsel did not, Your Honor. However, Mr. Guo frequently said that he couldn't understand what was being said to him. At AR-98, he said he couldn't understand the word group. At AR-128, he said he couldn't understand the word employment. He also said specifically that he used the terms shengyi to refer to problems conceiving at AR-112, and at AR-114, he said that he used the term shuyi to refer to injections, and that he researched the treatment and that the treatment was injections for inflammation, and if not serious, a patient could take pills instead. AR-118, AR-119. In sum, he could answer basic questions. Translation also comes into play where the BIA found that Mr. Guo was inconsistent regarding the name of his organization because his documents bear a different name. This difference here is between the words press group and corporation, which may have technical meanings in English, but we have to consider that Mr. Guo, as a Chinese journalist, we don't know if these are inconsistent in Chinese. Let me interrupt you, if I may, and I'll concede with you that there are some translation issues in the record here. However, am I not correct that this panel only needs to find support in the record for one of the reasons given by the BIA or the IJ for the adverse credibility finding to be affirmed? Isn't that correct? No, Your Honor. Because the Real ID Act has changed the heart of the claim rule, if this Court finds only one of the BIA's findings to be supported, this Court will then need to determine whether that finding alone, under a totality of the circumstances, goes to Mr. Guo to find Mr. Guo not credible. And there were several areas that were raised as the basis for the decision, correct? Yes. The BIA found four bases for its decision. And there really is no translation issue with respect to the alleged beating that this gentleman had. That was clear in the record below, was it not? There was a single beating. He was in jail for a period of up to a week. But the first day there, he was beaten, correct? Correct. That is correct, Your Honor. The only inconsistency regarding his beating that the BIA found was the difference between his right side damage and the fact that he blocked with his left hand. This is not supported by the record because Mr. Guo was clear that he was holding a baton in his right hand, demonstrating slashing down. So at that time, he had to use his left hand to block the blow because that was his only free hand. What we know regarding the translation press group incorporation was that Mr. Guo said, I don't understand the word group at AR-98. And at 102, more importantly, what I heard when my documents were being read back to me was correct. So he's saying that what is written, what he heard was not what's written in his papers in English. For the BIA to say that there is an inconsistency in his documents is ignoring what happened at his hearing. The BIA's other holdings are not supported by the record, as we've mentioned in our briefs. To conclude, Your Honors, this Court should reverse because the record compels a contrary result. And this Court has or the BIA, I'm sorry, has engaged in speculation and failed to consider Mr. Guo's circumstances as a journalist. But if this Court has doubts, these doubts are the result of translation defects, and this Court could remand to allow Mr. Guo to present his case. And your co-counsel is going to discuss the merits? My co-counsel will discuss the merits. Lastly, Your Honors, I would also just like to say because his interpreter spoke a different dialect and Mr. Guo had trouble understanding questions, responded nonsensically, this Court should also remand because Mr. Guo has been denied a full and fair hearing under due process under Perez last story. So you want to remand in order to develop the record. Is that right? Yes, Your Honor. Because of the translation. If I may, Your Honors, I'll allow my colleague to now come and discuss that.  Thank you. Thank you, Your Honors. Good morning, Your Honors. Good morning, Your Honors. For the merits of asylum for this case, this Court should find Mr. Guo eligible for asylum. This case is unlike the government's principal case of Gu versus Gonzalez because here Mr. Guo's detention was for longer than and his beating was more severe than that that the applicant suffered in Gu. Additionally, Mr. Guo suffered continual monitoring and threats by the Chinese police, and he also lost his job and he went to the hospital after he was released from his detention. And these are facts that were not present in Gu versus Gonzalez. Did the adverse credibility finding infect the evaluation of the merits of his claim? And if so, how? Yes, Your Honor. For well-founded fear of future persecution, the IJ said that because Mr. Guo has established a well-founded fear. But this is incorrect because if the IJ is examining the merits of the case, it should assume credibility. And so if this Court were to find that Mr. Guo has established, on the basis of the record, enough facts to establish for asylum, then this Court could remand for analysis of well-founded fear. However, this Court need not even remand because the facts on the record demonstrate that Mr. Guo suffered past persecution, which has given him an unrebutted presumption of a well-founded fear of future persecution. Other than that, what is the evidence of future persecution? Were he to return to China? And why didn't he procure letters from his parents supporting the alleged harassment by police? Well, first, Your Honor, he did not he was not asked to procure any letters. And so under the Real ID Act, the IJ can ask for corroborating evidence, but since Mr. Guo was not asked to provide any, he was not required to do so. And his testimony established that he called his family upon arriving in the United States, and his family said that because Mr. Guo left China under surveillance, the Chinese police came by his house, as they did until he had left China, and they threatened Mr. Guo, saying that he would be even more severely punished when he returns because he left under surveillance. This demonstrates an objectively reasonable ground for him to have a well-founded fear. And because Mr. Guo suffered continual harassment and monitoring by the police until he left, this demonstrates that, unlike Gu v. Gonzalez, Mr. Guo does have evidence demonstrating that this incident did occur. What do you want us to hold? What's your bottom line here? This Court should find Mr. Guo eligible for asylum based on the facts on the record because the government has not rebutted the presumption of a past person. And remand for the BIA to exercise his discretion as to whether he gets it? Yes, Your Honor. And with respect to withholding? This Court could grant because the same facts that underlie asylum demonstrate that he is more likely to get it. What is the case that permits us to do that? Strongest case. Sorry? What is the strongest case that permits us to find that he's eligible for withholding? Guo v. Ashcroft. Because there, the first incident of abuse was found to be sufficient for past persecution, and what happened here is even worse than that case. And if I may, I'd like to reserve the rest of my time for rebuttal. All right. Thank you. May it please the Court, David Webmore for the Attorney General. Your Honors, first I'd like to start with the translation issue, which has never been administratively exhausted. I think as the Court's hit on, there were no objections whatsoever to any translation issue. During the hearing, Petitioner was represented by counsel the entire time. There were a couple of instances where the interpreter looked up a word, gave a word, and there was no objection either by Petitioner or by Petitioner's counsel that it was  In fact, the only translation errors that seemed to appear were the ones by the translator that was chosen by Petitioner's own counsel at the time with regard to some documents, and that actually seemed to lead to additional problems. Furthermore, before the Board, there were no translation errors raised. Therefore, it's simply with that issue simply was not exhausted. The word translation doesn't appear anywhere within Petitioner's brief to the Board. And, you know, because of those, this Court lacks jurisdiction to even consider that issue. Same thing goes with withholding and cap protection. We look to Petitioner's brief to the Board. There's no indication that the words withholding of removal or any derivation thereof, cap protection, convention against torture, none of those words are used. The entire challenge is to the asylum denial, and therefore, the Board properly found those issues were not raised. It declined to address them, and therefore, this Court lacks jurisdiction over them. Kagan. Well, we can review the adverse credibility findings and make a determination as to whether the IJ articulated specific quotient reasons for that. So if we delve into the record to kind of test the adverse credibility finding, that's when the translation problems, at least in some instances, seem rather obvious. Your Honor, we would submit that they don't, in that there was no objection raised at the time, there was no concern raised at the time, the testimony continued on, and the areas where it would appear that there were some sort of issues regarding the translation, those actually were the fault of Petitioner's own translator with regard to his documents. The name of the organization for which he worked, that led to some confusion, and his birth date was not properly translated. But again, those are all by Petitioner's own translator that he used through his attorney to present evidence. And Petitioner, throughout this entire process, bears the burden of demonstrating that he's eligible for this relief. And by simply passing on those issues, not raising them to the board, he's failed to – not only has he failed to exhaust them, but he's failed to even raise any argument regarding them at any stage. What about the – what about the instances of adverse credibility findings by the IJ for which the Petitioner was not given an opportunity to explain? Does that create a problem? Well, Your Honor, I do believe in the four instances cited by the board, substantial evidence supports all of them, and Petitioner was given an opportunity to address them. With regard to the inconsistencies with the – where the injuries appeared on his body, there was a substantial colloquy, pages 89 through 90 of the record, where the immigration judge is asking Petitioner, you know, did you suffer, you know, any broken bones? Were you beat all over? Why did you pass out? What about failure to produce a copy of the article? Did the IJ give him an opportunity to explain why he didn't have a copy or an opportunity to then provide a copy of the article? Well, he was asked why he didn't have it, why he didn't have any of these documentations. He simply said he didn't have it with him. Same thing goes for all of the various hospital documents that he claimed to have. His explanation was, I just don't have it. And with regard to the article, it's particularly galling, because this is an article that he claims not only to have written, but knew that it could potentially result in his termination, such that he would actually go and proffer this document to Chinese agencies, knowing that he could potentially, if true, face ramifications. He knew his boss could potentially fire him, you know, after he overheard this conversation allegedly in the newsroom, and yet he does not retain a copy, but he does retain a copy of his – both his identification badge and the termination letter, both of which indicate that he worked at the Financial News magazine and not at this other newspaper, which he sort of dubiously claims to have written this article. I agree with you. An important document, and he had his lawyer present this time who could have questioned him following the IJ's questioning, correct? That's completely correct, Your Honor. Can I have you focus for a moment on an area where I don't believe there are any translation issues, and that's the testimony about his alleged beating and the nature of his injuries. The IJ never asked him to explain the inconsistencies between his testimony in the beating and the medical records. Does this failure to inquire prevent this Court from finding that inconsistency is supported by substantial evidence? I don't believe so, Your Honor. I think the immigration judge did make an effort to ask regarding the severity of the beatings, where the beatings occurred, saying, you know, he did demonstrate with one arm or the other, and, you know, with regard to the idea that he could have only demonstrated it with one hand and not the other, it seems like a pretty post hoc rationalization of why he actually did this. There was no challenge to that finding to the board in his brief to the board. He never addressed that issue. Was he represented by the same lawyer? Or did he have a representation before the board? No, Your Honor. I'm not actually sure. I believe it was the same lawyer. I can consult the record here. See, when a record is really this incoherent in places, it's sometimes difficult to say, well, this is all the fault of the lawyer, given our knowledge of the quality of representation that folks sometimes get. The record does indicate it was the same lawyer on both, both before the IJ and before the board. And what did the IJ do with respect to the translation problems? Did the IJ make any attempt to try to clarify the record? I think the immigration judge did, especially with respect to the translation errors that were on the part of the translator the Petitioner had actually hired. You know, those errors went to his birth dates and all of those things. And we would submit that with regard to his actual testimony, simply having an interpreter look up a word here or there to clarify, it's actually doing her due diligence. And with regard to this novel argument that's never been raised, that it was somehow a different dialect and that constitutes a translation error, I mean, that's absolutely not exhausted and purely speculative. Well, you know, it's not at all uncommon when you have slightly different dialects that there would be mistranslation issues. I mean, the example I'm thinking about in the record is the explanations regarding the name of the corporation. It seems to me, I realize, imperfect to review a cold record. He was doing his best to explain the relationships and the potential mistranslations in terms of how the company is structured. And I thought the IJ gave him a very hard time for that. One would think that it's pretty understandable, given the fact that he had to testify not only through an interpreter, but an interpreter who doesn't even speak the same dialect. I find the record in this case, frankly, problematic, not only because of translation errors, but there were instances when the IJ, I thought, really unfairly questioned him and kind of pushed him. The names of the companies in the newspapers being one example, the way that the IJ questioned him regarding his beatings, like, oh, my goodness, how in the world did you survive? Why weren't there broken bones? I think it does create a problematic record. Has the government evaluated this case to determine whether it's appropriate for exercise of prosecutorial discretion? We have, Your Honor. In fact, on Friday I spoke with ICE's office, the chief counsel here in Los Angeles, and they evaluated it and found that it was not, that he did not qualify for prosecutorial discretion at this time. With regard, even if you assume that the adverse credibility finding were in some way not supported, we submit that it fully is. He simply hasn't demonstrated past persecution. And this case is almost foursquare in line with GU. We have a single occasion of detention, physically mistreated for a short period of time, resulting in purely superficial injuries for which he did not actually undergo any medical treatment or having any lingering injuries from that. And he was released a few days later. There was minor supervision. The fact that he was terminated from his job, there's no indication that he couldn't seek other employment or that it would somehow amount to economic persecution or extreme economic hardship. In that respect, he was never forced to sign a confession, as GU was. And he was allowed to travel on his own passport despite the fact that he was supposedly under this detention, and the only aspect of proof --" I see my time has run. May I finish, Mara? Kagan. Yes. Go ahead and wrap up. Thank you, Your Honor. My last point is just the only evidence of any form of a well-founded fear of future persecution is this undated hearsay statement supposedly from some conversation with his parents. You know, again, he could have provided affidavits of that. He could have asked his parents to obtain a copy of the letter to support. I'm sorry, the document, the article that he had written. They apparently are there and still functioning. We've got your argument. Yeah, we've got that. Thank you. Thank you, Your Honors. Why isn't the withholding claim waived given that he never raised it to the BIA? Because the same facts underlie the asylum and the withholding claim. And this the precedent of this Court and the statute says that an application for asylum will always be taken to be also an application for withholding of removal. And additionally here, I'd like to say that the court-appointed translator, it was not Mr. Guo's translator that had the issues at the hearing. It was the court-appointed translator, and that it is hard to – it is hard for counsel to know because he was not fluent in Mandarin, and so he would have a hard time objecting at the trial to the problems that were unfolding. And that the problems that unfolded regarding translation both undermine adverse credibility under this Court's precedent, and he, as well as go to the due process violation that was obvious on the face of the record. Well, I don't know quite how you can argue that the lawyer wasn't in a position to object, yet we're in a position to read the cold record and decide that there was a poor translation problem. Right. Well, the lawyer would have a hard time – sorry, see, I'm out of time. Go ahead. You can finish the sentence. The lawyer would have a hard time understanding that this record that developed was difficult for the IJ to understand because he was part of the problem as he hired Ms. Chen that had mistranslations and arguably provided not sufficient counsel. But this Court can look at just the face of the record and the BIA could as well, and that's why this claim is exhausted, is because this adverse credibility finding was premised upon all the translation problems that Mr. Guo suffered during his hearing. All right. Thank you. Thank you very much for both sides' arguments. We'll take the matter under submission for decision by the Court. Thank you so much for your participation in the pro bono program. Thank you. We appreciate it very much.
judges: Zouhary, Schroeder, Nguyen